Merrimack,　)
June, 1900. )

### BOSTON & MAINE RAILROAD v. SARGENT.

70  299
71  496
71  497
70  299
72  465

A judgment is conclusive only as to such facts as were litigated and determined in the action.

If one defendant in an action for negligence, having paid the judgment rendered against himself and another, sues for indemnity, it is incumbent upon him to prove that he could not have prevented the injury by ordinary care; and the judgment in the original action is not evidence for this purpose unless that fact was therein litigated and determined.

Where counsel for a defendant in an action for negligence has made statements in argument tending to exonerate a co-defendant from fault, such admissions are evidence competent to be submitted to a jury in a subsequent suit for indemnity brought by the party who has paid the judgment rendered against both.

CASE, for negligence. The plaintiffs seek to recover the sum of money paid by them upon a judgment against them and the defendant in favor of C. M. & A. W. Rolfe, for damages sustained from a fire communicated to their storehouse in consequence of the negligence of the plaintiffs and the defendant. In the Rolfes' suit (69 N. H. 476) it appeared that Sargent had "contracted with the railroad to transport a carload of potatoes for him, and agreed that it should not be liable for damages arising from heat or cold. The contract gave him the entire control of the interior of the car.

He maintained a fire therein which the evidence tended to show was negligently managed, thereby causing the injury complained of." The plaintiffs' evidence in this suit consisted of the writ in that action, the plea (general issue), the docket entries, the execution that was issued upon the judgment with the return of the officer thereon, the reserved case, the contract between the railroad and Sargent by virtue of which the potatoes were transported, the arguments of Sargent's and the Rolfes' counsel before the jury, and the judge's charge.

The docket entries showed that judgment was rendered in favor of the Rolfes against the railroad and Sargent at the April term, 1899, in accordance with the order at the law term, for $2,896.87 damages and $136.76 costs. The return upon the execution showed that the officer commenced a levy upon one of the plaintiffs' locomotives, and that subsequently the plaintiffs paid him $3,082.50 in full satisfaction of the judgment and his fees.

The counsel for the Rolfes, in his argument to the jury, made no claim that the Boston & Maine Railroad was negligent in fact. The following extracts from the argument of Sargent's counsel have reference to the railroad's liability: "We find here that there is an allegation of carelessness. . . . I don't know why, under the circumstances, the railroad was brought in here. . . . I have inquired in my own mind whether it was simply to get the railroad in here as a corporation, so as to excite some sort of sympathy on your part in behalf of the plaintiffs. I trust that that has not been their purpose or object in any direction, but why, or for what purpose, or how it comes that they should have brought the railroad in here to answer for Mr. Griffin's, or, in other words, Mr. Sargent's carelessness, is what I can't quite contemplate. . . . The road has no interest in here, practically speaking. It is Mr. Sargent, because, if there has been any carelessness, it is simply the carelessness of Sargent,— in other words, the carelessness of Sargent's representative, Griffin; and if it was the carelessness of Mr. Griffin, then, if the railroad is held here at all, it simply turns around and calls for Sargent, and if he has got money enough he must respond."

The following are the material portions of the judge's charge relating to the railroad's liability: "So far as the question is one of fact to be submitted to you, it is merely, ought the defendant Sargent to pay for the burning of the plaintiffs' property? For the legal relations of the defendant railroad, upon the undisputed facts in the case, to the defendant Sargent, are such that, so far as the plaintiffs are concerned, if they are entitled to a verdict against Sargent they are also entitled to one against the railroad. So that the connection of the defendant corporation in the case is a matter

to which you will not be required to give any attention. Whether, as between Sargent and the railroad, Sargent or the railroad ought to pay all the damages which may be recovered by the plaintiffs does not affect the plaintiffs' right to a verdict. The plaintiffs cannot recover at all unless on the evidence Sargent is legally responsible to them for the injury sustained; and, as I have said, if Sargent is responsible, the railroad is also, as a matter of law. Therefore we need not investigate in this case, in the shape it now is, the relative rights of the two defendants. . . . The question on the whole case is: Was Griffin careless in leaving such a fire as you find he did leave Monday night, in such a stove, set up and arranged as you find it was, with the car in the condition it was, near the plaintiffs' storehouse? . . . Something has been said in the opening and in the evidence upon the question whether the defendant railroad exercised due care in the management of their car while in the yard at Penacook,— with reference to the action of the yardmaster and station agent in shifting the car about. This question will not trouble you. There is no evidence in the case upon which you will be justified in finding the defendant railroad responsible upon this ground. If your verdict is against Sargent on the grounds I have stated, you will also render it against the other defendant upon this evidence. If Sargent is guilty, the other defendant is. If he is not guilty, there is no evidence upon which the other defendant can be charged."

At the close of the plaintiffs' testimony they moved that a verdict be directed in their favor. The motion was denied, and they excepted. The defendant also moved that a verdict be directed in his favor, which motion was granted *pro forma*, subject to the plaintiffs' exception.

*Frank S. Streeter*, for the plaintiffs. The question whether these plaintiffs, through their servants, were guilty of negligence in contributing to the fire was put directly in issue by the pleadings in the Rolfe action. The issue thus presented was not withdrawn or eliminated from the case, but was tried and determined upon its merits. The Rolfes insisted upon its submission to the jury, as is shown by their exceptions and request. The charge of the court upon the subject, particularly the instruction that "there is no evidence in the case upon which you will be justified in finding the defendant railroad responsible upon this ground," is an unmistakable charge that the jury could not reasonably find the railroad guilty otherwise than in the person of Sargent, and all parties at the time so understood.

It is obvious that this charge was in substance and effect the direction of a verdict for the railroad upon the issue of contributory negligence, and that a formal verdict for the railroad would

have been directed, in accordance with its motion, had it not been liable for the acts of Sargent as its *quasi* servant. But the court's decision, as expressed in his charge, was itself an adjudication of the issue on the merits, in a constitutional manner, and to the efficacy of that adjudication a formal verdict would have added nothing. "When a party is entitled to a judgment in his favor, he may have it without the idle formality of a verdict which the jury would be required by law to give"; and a judgment "is merely the conclusion that naturally and regularly flows from the premises of law and fact." *Ordway* v. *Railroad*, 69 N. H. 429. The verdict and judgment in the Rolfe action, construed in the light of the court's charge, were a verdict and judgment that the railroad was there liable only because Sargent was its *quasi* servant, and, by necessary implication, that it was not liable by reason of any negligence of its own. *Morgan* v. *Railway*, 83 Wis. 348.

If the judgment is binding upon any issue, it is binding upon every issue therein litigated and determined; and if it binds one of these parties, it binds the other. If Sargent had satisfied the judgment and were seeking indemnity of the railroad, he would be estopped by the judgment to deny his negligence; and the reversed position of the parties cannot affect the result. If it had been adjudged in the Rolfe action that the railroad, of itself and independent of Sargent, was negligent, the railroad would be estopped in this proceeding to deny that negligence; and the railroad can assert a judgment in its favor if, on the same issue, in a proceeding between the same parties, it would be bound by an adverse judgment. *Gregg* v. *Belting Co.*, 69 N. H. 247. Both the railroad's due care and Sargent's negligence having been finally adjudicated in the Rolfe action, the plaintiffs were entitled to rest their case upon the judgment in that action and the sheriff's return, and a judgment must now be entered in the plaintiffs' favor. *Lawrence* v. *Stearns*, 79 Fed. Rep. 878.

*Martin & Howe* and *Sargent & Niles*, for the defendant. No evidentiary force should be ascribed to the statement of the defendant's counsel in the argument of another suit. We base our conclusion on these grounds: (1) What counsel said in the other suit was the statement of a legal proposition, and not a statement of fact. (2) The part of the counsel's argument in question was not authorized by the defendant, and therefore cannot affect his rights. (3) If the part of counsel's argument in question is held to be the statement of any fact from which a jury would be authorized to conclude that the railroad could not have prevented the loss by the exercise of ordinary care, such statement was the unwarranted disclosure of facts learned by the counsel of his client, as a result

of the professional employment of the former by the latter; and such disclosure, being of absolutely privileged communications, is not evidence for any purpose against the client.

1. No one will claim that the trial judge in the former case stated facts to the jury in what he said about holding the railroad. He was instructing the jury in the law that was to govern them in deciding the case. The defendant's counsel said: "The road has no interest in here, practically speaking. It is Mr. Sargent, because, if there has been any carelessness, it is simply the carelessness of Sargent; . . . if the railroad is held here at all, it simply turns around and calls for Sargent, and if he has got money enough he must respond." The meaning of this was, that the railroad was to be held liable in law for Sargent's negligence, if liable at all; and that, if held liable for the result of Sargent's negligence, the railroad could recover indemnity of him. Counsel paraphrased what he had been told the trial court would charge the jury, and added his own opinion that Sargent under those circumstances would be responsible over to the railroad. The context clearly shows that when counsel said, "if there has been any carelessness it is simply the carelessness of Sargent," he meant, and his hearers must have understood, that, as the case then stood, all the evidence of negligence was against Sargent. That was the fact, and is the only sensible construction of which his language is susceptible. There is not a word or combination of words in what counsel said that has any tendency to show, broadly speaking, that the railroad could not have prevented the injury by the exercise of ordinary care; and that fact is the material issue here. All said and done by counsel which does not tend to establish that fact is immaterial. What did counsel say that does not harmonize with our theory? Why should counsel discuss the rights and liabilities between the railroad and Sargent in the argument of a case in which those rights and liabilities were not involved, and a fortiori where they were expressly left out of consideration? He must have discussed those rights and liabilities in order to make evidence against his client in regard to them, because so long as he was talking about another case he was not making evidence against Sargent in this one. Where did he stop talking about the facts and circumstances of the former case, and begin to make the admission credited to him? What is the admission that he made?

2. "An attorney who is employed to prosecute or defend an action is a special agent. His authority is bounded and limited by the necessities of the case. . . . But no case is found, pushing the limits of the authority beyond the limit of a reasonable necessity, or beyond the performance of acts touching the action and the proceedings connected therewith." *White* v. *Hildreth*, 13 N. H.

104, 106. The general rule is, that an attorney "is not authorized . . . to exercise any authority . . . which is not necessarily involved in the discharge of his duty." *Penniman* v. *Patchin,* 5 Vt. 346.

There is nothing in the case to show that Sargent's counsel had any other or greater authority than that conferred by the rule of this court above quoted. One thing is reasonably certain : he was not hired by Sargent to make a case against him in favor of the railroad. We can conceive of nothing necessarily involved in the discharge of his duty in the former case — the only case he was hired to do work in — which by any stretch of imagination can be considered to warrant him in making evidence against his client for use in a case brought months afterward, and not then even contemplated, so far as there is anything to show. We have, then, the following truisms : Counsel's authority was limited to the reasonable necessities of his case ; and it was not necessary, or even sensible, in the defence of the first case, for counsel employed for that defence to jeopardize his client's rights in another and separate case. It follows as a corollary that, if what counsel said was an admission that the railroad by ordinary care could not have prevented the injury, it was the admission, by a special agent, as to a matter outside the scope of his authority, and therefore void.

3. It is certain that, in order to give to the remarks of counsel the probative force attributed to them, what was said must be considered an admission of fact, because an admission (or, more properly, an opinion) of law would not be evidence from which the jury would have been justified in finding that the plaintiffs were not negligent. It is equally certain that counsel could not have made such admission from any facts in the former case, because the so-called admission presupposes counsel's knowledge of every fact material to a final adjustment of the question of negligence between the railroad and Sargent ; and it is to fly in the face of the record (particularly the part of it where the trial court says " Therefore we need not investigate in this case, in the shape it now is, the relative rights of the two defendants ") to assert that counsel was able to make the admission credited to him,— that is, an admission necessitating full knowledge of all material facts bearing on the question of negligence as between the railroad and Sargent, from the facts in a case where that question was expressly excluded from consideration, and where by no possibility could any evidence of the railroad's negligence in the possession of Sargent have appeared.

Assume, then, that counsel made the admission charged, and it unquestionably and necessarily appears that he possessed knowledge of other facts than those in the Rolfe case, and that from such

other facts he was able to say that the railroad by ordinary care could not have prevented the injury. Who could have known those other facts, absolutely essential to the so-called admission, but the client Sargent? How did counsel become possessed of information of what Sargent knew regarding the facts material to the question of negligence as between the railroad and himself, unless Sargent, under the protection of professional secrecy, revealed that knowledge to him? Afford counsel all the information contained in the trial of the Rolfe case, restrict him to that information, and then ask him: "Could the railroad have prevented the injury by ordinary care?" It is plain that he must answer: "I cannot say; the answer to that question depends, not alone or primarily, on the evidence of the railroad's negligence possessed by the Rolfes; it cannot be answered until I know what evidence material to that issue Sargent has." We can see no escape from the conclusion that if counsel made the admission credited, he made it, and it derives its entire weight, from knowledge acquired from his client by virtue of his confidential employment.

Does the court propose holding such violation of privilege evidence against the injured party? The general rule is: "Admissions made by a client while in consultation with his attorney, and in fact all communications between parties so situated, which are the proper subject of professional employment, are privileged; and, although admissions in the strict, technical sense of the term, they cannot invade the province of legal evidence without the express assent of both parties." 1 Rice Ev. 450. It is true the client can waive his privilege, and the counsel can then disclose what he knows; but such waiver must be "clear and express." *Tate* v. *Tate*, 75 Va. 522; *Montgomery* v. *Pickering*, 116 Mass. 227, 231. The privilege includes all communications made for the purpose of professional advice, whether it relates to a suit pending or contemplated, or any other proper matter for such advice. *Bigler* v. *Ryner*, 43 Ind. 112; *Yates* v. *Olmstead*, 56 N. Y. 632. The rule seems to be that the attorney cannot make disclosure unless the facts warrant his belief that his client consents. *Sleeper* v. *Abbott*, 60 N. H. 163. There is nothing to show Sargent's consent to the revelation, by his counsel, of his evidence in the present case. It does not even appear that he was present; and, whether he was or not, the so-called admission is too far-fetched and abstruse to admit of insistence that Sargent must have understood it as now interpreted, and have interrupted the argument of his counsel by objecting in order to prevent a waiver. Waiver is predicated upon voluntary action with full knowledge of the facts, and nothing of the kind can be pointed out here.

4. Assuming counsel's remarks in argument of the former case to amount to an admission that the railroad could not have prevented the injury by ordinary care, the defendant claims that such admission was not evidence in the present case for any purpose. In *Cocheco Bank* v. *Haskell*, 51 N. H. 116, at the first trial the defendant's counsel admitted that the settlement of certain questions of law raised "would be the end of the case." The case was thereupon taken from the jury, and the questions of law settled. Upon the second trial of the case, the plaintiff introduced in evidence the former reserved case in which the admission of the defendant's counsel appeared. The court expressly declined to give any weight to the admission. We can comprehend no difference between declining to enforce such an admission as an agreement, and declining to allow the jury to enforce the same; and the present case should adopt the latter alternative. See, also, *Larry* v. *Herrick*, 58 N. H. 40; *Adee* v. *Howe*, 27 Hun 98; *Dennie* v. *Williams*, 135 Mass. 28; *Weisbrod* v. *Railroad*, 20 Wis. 441; *Wilkins* v. *Stidges*, 22 Cal. 231; *Colledge* v. *Horn*, 3 Bing. 119.

PIKE, J. In this case, as in all similar cases, the plaintiffs must show that the injuries complained of were not caused by their own negligence, but were caused by that of the defendant. They must prove that by the exercise of ordinary care they could not, and the defendant could, have prevented the accident. The sole effect of the judgment in the Rolfes' suit "is to relieve the parties from the burden of proving or disproving the facts therein litigated or determined. Upon those facts both parties are concluded by the judgment." *Gregg* v. *Belting Co.*, 69 N. H. 247, 249. It was therein determined (1) that the Rolfes were without fault, (2) that Sargent's negligence was a contributing cause of the injury to their property, and (3) that they were entitled to the damages assessed, as a compensation for their loss. But whether the railroad by ordinary care could have avoided the injury, was not litigated or determined, and the judgment is not evidence upon that issue in this suit. *Gregg* v. *Belting Co., supra.*

In the Rolfes' suit, it was immaterial whether the railroad were negligent or not. The heating of the car, which "was a part of the operation of the road," was entrusted by the railroad to Sargent, and in the performance of the duty Sargent's act was, as to the Rolfes, the act of the railroad, for which it was responsible. *Rolfe* v. *Railroad*, 69 N. H. 476. The railroad would not have been liable if Sargent had acted with due care; but Sargent's failure to so act rendered the railroad liable, with him, as a matter of law. It was therefore unnecessary in that suit to determine whether the railroad itself in fact exercised due care to prevent

the injury.  The counsel for the Rolfes, in his argument to the jury, made no claim that the railroad was negligent in fact.  Sargent's counsel stated that, if the railroad were to be found negligent, it would be only as an inference of law from the negligence of Sargent.  The presiding justice instructed the jury that they were not called upon to determine whether the railroad was in the exercise of ordinary care, and repeatedly stated to them that, if the railroad were to be found negligent, it would only be through an inference of law from a finding that Sargent was negligent.  It is certain that the question of fact as to the railroad's negligence was not submitted to the jury.  But the plaintiffs say that the presiding justice, in effect, directed a verdict in their favor on this issue, upon the ground that there was no evidence from which the jury could properly find that they were not in the exercise of ordinary care.  In the closing words of his charge he said : "Something has been said in the opening and in the evidence upon the question whether the defendant railroad exercised due care in the management of their car while in the yard at Penacook,— with reference to the action of the yardmaster and station agent in shifting the car about.  This question will not trouble you.  There is no evidence in the case upon which you will be justified in finding the defendant railroad responsible upon this ground."  It is evident from this instruction, in connection with others, that the presiding justice concluded it was sufficient for the purposes of the case to determine whether or not Sargent was negligent, and so was unnecessary to determine the question of fact whether the railroad was negligent.

It not having been determined in the former action that the railroad by ordinary care could not have avoided the injury to the Rolfes' property, the plaintiffs were bound to prove it in this case.  Portions of the argument of Sargent's counsel in the former trial were competent evidence against Sargent upon the issue whether the plaintiffs exercised due care.  Among other things, the counsel stated that he did not know why, under the circumstances, the railroad was brought into the case; that they had no interest in the case, practically speaking; and that, if there had been any carelessness, it was simply the carelessness of Sargent.  He also said that, if the railroad is held responsible in this suit, "it simply turns around and calls for Sargent, and if he has got money enough he must respond."  All this tended to prove an admission by Sargent that the cause of the injury to the Rolfes' property was in no part due to the fault of the railroad.  *Holderness* v. *Baker*, 44 N. H. 414, 418 ; *Lewis* v. *Sumner*, 13 Met. 269, 273 ; *Lord* v. *Bigelow*, 124 Mass. 185 ; 1 Gr. Ev., *s.* 186.

The plaintiffs' motion that a verdict be directed in their favor

was properly denied, and the exception is overruled. The defendant's motion that a verdict be directed in his favor should have been denied, and the exception is sustained.

*Verdict set aside.*

CHASE and PARSONS, JJ., did not sit: the others concurred.